**Michael CAIN and Jennifer Cain, Individuals, Plaintiffs,**

v.

**BOVIS LEND LEASE, INC., a Florida corporation; and Willamette Valley Medical Center, LLC, a Delaware limited liability company; Defendants and Third–Party Plaintiffs,**

v.

**Wylie Steel Fabricators, Inc., a Tennessee corporation; and Earl Swensson Associates, Inc., a Tennessee corporation; Third–Party Defendants.**

No. CV. 09–723–HU.

United States District Court, D. Oregon, Portland Division.

Sept. 13, 2011.

Ernest J. Simmons, Karen R. Thompson, Robert K. Udziela, Portland, OR, for Plaintiffs.

John J. Soltys, William F. Knowles, Ramona N. Hunter, Cozen O'Connor, Seattle, WA, for Defendant and Third–Party Plaintiff, Bovis Lend Lease, Inc.

Steven P. Jones, Karen V. Wiggins, Keating Jones Hughes PC, Portland, OR, for Defendant and Third–Party Plaintiff, Willamette Valley Medical Center, LLC.

Matthew C. Casey, Bullivant Houser Bailey, PC, Portland, OR, for Third–Party Defendant, Wylie Steel Fabricators, Inc.

Angela M. Otto, Tyler J. Storti, Stewart Sokol & Gray LLC, Portland, OR, for Third–Party Defendant, Earl Swensson Associates, Inc.

## ORDER

HERNANDEZ, District Judge:

Magistrate Judge Dennis J. Hubel issued a Findings and Recommendation (doc. # 162) on July 14, 2011, in which he recommends that I grant in part and deny in part the motions for summary judgment (doc. # 120, # 127, and # 132) filed by Willamette Valley Medical Center, LLC ("Willamette Valley"), Wylie Steel Fabricators, Inc. ("Wylie Steel"), and Bovis Lend Lease, Inc. ("Bovis") (collectively, "Defendants"), respectively. In the Findings and Recommendation, the Magistrate Judge also recommends that I grant the motion for partial summary judgment (doc. # 123) filed by Earl Swensson Associates, Inc. ("ESA").

Plaintiff Michael Cain and Jennifer Cain (collectively, the "Cains") and Defendants timely filed objections to the Magistrate Judge's Findings and Recommendation. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

 When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report. 28 U.S.C. § 636(b)(1); *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir.2009); *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc).

I have carefully considered the parties' objections and conclude that the objections do not provide a basis to modify the Findings and Recommendation. I have also reviewed the pertinent portions of the record *de novo* and find no error in the Magistrate Judge's Findings and Recommendation.

## CONCLUSION

The Court ADOPTS Magistrate Judge Hubel's Findings and Recommendation

(doc. # 162). Defendants' motions for summary judgment (doc. # 120, # 127, and # 132) are therefore granted in part and denied in part, and ESA's motion for partial summary judgment (doc. # 123) is granted. Oral argument is unnecessary.

IT IS SO ORDERED.

**FINDINGS AND RECOMMENDA-
TIONS ON MOTIONS FOR
SUMMARY JUDGMENT**

DENNIS JAMES HUBEL, Unites States Magistrate Judge:

### TABLE OF CONTENTS

*INTRODUCTION* ........................................................ 1258
*SUMMARY JUDGMENT STANDARDS* ..................................... 1261
*ESA'S MOTION FOR PARTIAL SUMMARY JUDGMENT* ................... 1261
*CAIN'S CLAIMS UNDER THE OREGON SAFE EMPLOYMENT ACT* ........... 1262
 *First Claim for Relief: Violation of OSEA § 654.015 and Second Claim for
 Relief: Violation of OSEA § 654.010* .................................. 1266
 *Bovis's Motion* ...................................................... 1266
 *Willamette Valley's Motion* ........................................... 1267
 *Wylie Steel's Motion* ................................................ 1271
*THIRD CLAIM FOR RELIEF: PREMISES LIABILITY* ..................... 1271
*FOURTH CLAIM FOR RELIEF: BOVIS'S VIOLATION OF THE ELA* .......... 1276
*FIFTH CLAIM FOR RELIEF: NEGLIGENCE* ............................. 1278
*SIXTH CLAIM FOR RELIEF: LOSS OF CONSORTIUM* ..................... 1282
*WYLIE STEEL'S MOTION* ............................................. 1283
 *Wylie Steel's Statute of Limitations Defense* .......................... 1283
 *Assertion of a New Claim* ............................................ 1288
 *Indemnity Claims* ................................................... 1288
*CONCLUSION* ......................................................... 1289
*SCHEDULING ORDER* ................................................. 1290

### INTRODUCTION

This is an action arising from injuries suffered by the plaintiff Michael Cain ("Cain") when he fell from a ladder while working on a renovation project at Willamette Valley Medical Center ("Willamette Valley" or "the hospital"). Cain brings claims against all of the defendants for violation of the Oregon Safe Employment Act ("OSEA"), O.R.S. § 654.015, and for common-law negligence. He brings additional claims against Bovis Lend Lease ("Bovis") for violation of OSEA § 654.010, premises liability, and violation of the Oregon Employer Liability Act ("ELA"), O.R.S. §§ 654.305–654.335; and against Willamette Valley for premises liability. Dkt. # 91, Second Amended Complaint. Cain seeks "general damages" up to $3,000,000; ongoing lost income in excess

of $58,500; lost earning capacity in the amount of $650,000; and ongoing medical bills in excess of $229,722.28. Mrs. Cain brings a loss of consortium claim against all of the defendants, seeking damages in the amount of $300,000. *Id.*

The basic facts of the case are straightforward and, except as discussed later in this opinion, largely undisputed. The following factual summary is taken from the Second Amended Complaint, and the defendants' motions for summary judgment. *See* Dkt. # 91, Second Amended Complaint; Dkt. # 121, Willamette Valley's memorandum, at 9–11; Dkt. # 148, Cain's response to Willamette Valley's statements of material fact; Dkt. # 124, ESA's Concise Statement of Material Facts; Dkt. # 129, Wylie Steel's Concise Statement of Material Facts; Dkt. # 133, Bovis's State-

ment of Undisputed Facts; and Dkt. # 147, Cain's response to Bovis's statement of material facts.

In 2006, Willamette Valley and its former owner, Triad Hospitals, Inc., contracted with Bovis, as general contractor, for a major renovation to Willamette Valley's health care facility in McMinnville, Oregon. Bovis, in turn, contracted with McDonald & Wetle ("McDonald"), a commercial roofing company, to install a new roof as part of the project. Cain was an experienced roofer who was employed as a foreman by McDonald.

Willamette Valley also contracted with Earl Swensson Associates, Inc. ("ESA") to perform architectural design work for the project. As part of ESA's contract with Willamette, ESA designed a fixed metal ladder to be installed on Willamette's premises to allow access from a lower roof to the "penthouse roof." Actual fabrication of the ladder was done by Wylie Steel Fabricators, Inc. ("Wylie Steel"), a Bovis subcontractor. In approximately September of 2007, Bovis installed the ladder on Willamette Valley's premises. The ladder was accessible only by authorized personnel through an internal maintenance area at the hospital. Construction workers used the ladder as needed while work progressed on the renovation project. Cain, himself, had used the ladder more than once prior to his accident. *See* Dkt. # 122, Ex. 9, Cain Depo., at pp. 114–15.

In December 2007 and January 2008, Willamette was experiencing problems with ongoing roof leaks from the newly-installed penthouse roof. On January 10, 2008, McDonald sent Cain to the site to investigate the roof leaks. Cain was met at the job site by Delbert Allen, a Bovis employee, who provided access to the restricted area using a key issued to him by Willamette Valley. Cain had investigated the roof leaks on at least two previous occasions. This time, Cain was going to conduct a flood test, where he would plug the drains and then flood the penthouse roof to determine the exact location and cause of the leaks.[1] Equipment required for the test included drain plugs and a hose.

Cain testified that the ladder "looked fine" to him, and he did not observe anything unusual or wrong with the ladder on the day of his accident. *Id.*, p. 116. If he had noticed anything wrong with the ladder, he would have reported it and not climbed the ladder. Dkt. # 122, Ex. 9, Cain Depo., at pp. 114–15. However, he also testified the ladder was somewhat awkward to climb because of its width. Doc. No. 144, Ex. A, Cain Depo., at pp. 125, 127.

Cain began climbing the ladder with a hose coiled over his shoulder. He also was carrying two drain plugs in his hands as he walked to the ladder, but he claims he did not climb the ladder with the drain plugs in his hands. Dkt. # 147, p. 7. Drain plugs are visible in photographs taken of Cain immediately after the accident. *See* Decl. of Ramona N. Hunter, Dkt. # 134, Ex. D.

---

1. Bovis contends Cain "testified under oath that the decision to conduct the leak test was his and his alone." Dkt. # 133, p. 5 (citing Dkt. # 134, Ex. A, Cain Depo., at p. 106, ll. 22–25; p. 107, ll. 1–3). Cain disputes this assertion, stating he "testified that Del Allen directed him to do a leak test." Dkt. # 147, p. 6 (citing Cain Depo. at p. 104, ll. 10–12).

Incredibly, neither Bovis nor Cain submitted these cited pages to the court. However, page 104 of Cain's deposition was submitted by Willamette Valley in support of its motion, and the transcript indicates Cain testified the leak test was Allen's idea. Dkt. # 122, Ex. 9, Cain Depo., p. 104.

Cain testified he put the hose over his shoulder, and then began climbing the ladder hand-over-hand, "because it was uncomfortable to go side rail." Dkt. # 134, Ex. A, Cain Depo., p. 258; *see* Dkt. # 144, Ex. 1, Cain Depo., p. 127. As Cain neared the top of the ladder, he "put [his] hand on the grab rail to pull [himself] up over the parapet, up over the edge," *id.,* and he fell from the ladder to the roof, about seventeen feet below, sustaining severe injuries. Cain claims the ladder was defective and its design dangerous, and these alleged defects were the proximate cause of his fall.

Cain agrees that at the time of the accident, he was "a trained roofer, with 20 years of experience," and he "knew the basic rules of ladder safety, the most fundamental of which were (1) not to climb with your hands encumbered; and (2) always maintain three points of contact on the ladder at all times." Dkt. # 147, p. 8. Cain believes he "had all hands and feet where they should have been" immediately prior to the fall. Dkt. # 134, Ex. A, Cain Depo., p. 207.

After the accident, McDonald was cited by the Oregon Occupational Safety and Health Division "for failing to provide adequate fixed ladder training." Dkt. # 147, p. 11; *see* Dkt. # 134, Ex. E, Citation and Notification of Penalty. The parties agree that McDonald is "statutorily immune from liability as Mr. Cain's employer." *Id.,* p. 12.

All of the defendants have filed motions for summary judgment.[2] Bovis, Willamette Valley, and Wylie Steel seek summary judgment on all of Cain's claims. ESA seeks partial summary judgment as to Cain's "First Claim for Relief: Violation of Oregon Safe Employment Act, ORS 654.015." Dkt. # 123, p. 2.

I first will set forth the standards applicable to the court's consideration of motions for summary judgment. I then will

2. The defendants' motions for summary judgment and the opposing parties' responses are as follows:
 * Dkt. # 120, # 121, & # 122—**Willamette Valley's motion** for summary judgment, supporting brief, and declaration with exhibits; Dkt. # 148, Cain's response to Willamette Valley's statements of material fact; Dkt. # 142, Cain's memorandum in opposition to Willamette Valley's motion; Dkt. # 144, Declaration of E.J. Simmons in response to all of the defendants' motions; and Dkt. # 154, Willamette Valley's reply in support of its motion.
 * Dkt. # 123, # 124, & # 125—**ESA's motion** for summary judgment, supporting brief, and declaration; Dkt. # 144, Declaration of E.J. Simmons in response to all of the defendants' motions; Dkt. # 146, Cain's response to ESA's statement of material facts; and Dkt. # 157, Cain's statement of non-opposition to ESA's motion.
 * Dkt. # 127, # 128, # 129, & # 130—**Wylie Steel's motion** for summary judgment, supporting brief, statement of material facts, and supporting declaration with exhibits; Dkt. # 143, Cain's memorandum in opposition to Wylie Steel's motion; Dkt. # 144, Declaration of E.J. Simmons in response to all of the defendants' motions; Dkt. # 145, Cain's response to Wylie Steel's statement of material facts; Dkt. # 140, Willamette Valley's memorandum in response to "Part G" of Wylie Steel's motion; Dkt. # 149, Wylie Steel's reply to Willamette Valley's response; Dkt. # 152, Wylie Steel's reply to Cain's response; and Dkt. # 153, Wylie Steel's response to Cain's statement of facts.
 * Dkt. # 132, # 133, & # 134—**Bovis's motion** for summary judgment, supporting brief, and declaration with exhibits; Dkt. # 147, Cain's response to Bovis's assertions of material fact; Dkt. # 141, Cain's memorandum in opposition to Bovis's motion; Dkt. # 144, Declaration of E.J. Simmons in response to all of the defendants' motions; and Dkt. # 150, Bovis's reply in support of its motion.

turn to consideration of the defendants' motions for summary judgment.

## *SUMMARY JUDGMENT STANDARDS*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). In considering a motion for summary judgment, the court "must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir.2002) (citing *Abdul–Jabbar v. General Motors Corp.,* 85 F.3d 407, 410 (9th Cir.1996)).

The Ninth Circuit Court of Appeals has described "the shifting burden of proof governing motions for summary judgment" as follows:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. *Id.* at 324, 106 S.Ct. 2548. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. 2505.

*In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir.2010).

## *ESA'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

ESA's motion for partial summary judgment can be resolved quickly, so I will address it first. The Oregon Safe Employment Act provides, "No employer or owner shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health." O.R.S. § 654.015. ESA argues O.R.S. § 654.015 does not provide for a private cause of action, but even if it does, the statute does not apply to ESA in this context because ESA was never Cain's direct employer or the owner of the facility. Dkt. # 125. Cain filed a response to ESA's statement of material facts, Dkt. # 146, but despite Cain's disagreement with some of those facts, Cain does not oppose ESA's motion for partial summary judgment. *See* Dkt. # 157. It is clear from the undisputed facts that ESA was never Cain's employer, nor was ESA an "owner" of the premises as contemplated by the statute. I therefore recommend

ESA's motion for partial summary judgment be granted as to Cain's First Claim for Relief, leaving, as to ESA, only a common-law negligence claim.

## CAIN'S CLAIMS UNDER THE OREGON SAFE EMPLOYMENT ACT

Cain has asserted two statutory tort claims for alleged violations of the OSEA. In his First Claim for Relief, he seeks damages for the defendants' violation of OSEA § 654.015, quoted above. In his Second Claim for Relief, he seeks damages from Bovis for violation of OSEA § 654.010,

> which in substance requires every employer to (1) furnish employment safe for employees therein; (2) furnish a place of employment safe for employees therein; (3) furnish and use such safety devices and to adopt such means as are reasonably adequate to render such employment and place of employment safe; and (4) to do every other thing reasonably necessary to protect the life and safety of such employees.

*Hillman v. Northern Wasco County People's Utility District,* 213 Or. 264, 289, 323 P.2d 664, 676 (1958), *overruled on other grounds by Maulding v. Clackamas County,* 278 Or. 359, 563 P.2d 731 (1977).

In support of his contention that the defendants failed to maintain or construct a safe place of employment, Cain lists numerous state and federal regulations he claims the defendants violated. *See* Dkt. # 91, pp. 5–6. Among other things, he invokes a third section of the OSEA which requires "[e]very employer, owner, employee and other person" to obey all orders, decisions, rules, and regulations applying to employee health and safety.

O.R.S. § 654.022. Cain also alleges numerous failures to provide a safe workplace without specifying a particular statute or regulation that was violated. *See* Dkt. # 91, ¶¶ 11(k), (*l*), (m) & (n).

A threshold question in considering the defendants' motions for summary judgment on these OSEA claims is whether the OSEA provides for a private cause of action for damages. The court's decision on the issue will affect Cain's OSEA claims against all of the defendants. As a result, the court will examine the issue of whether a private right of action exists under the OSEA before considering the defendants' summary judgment motions on Cain's individual claims.

The Iowa Supreme Court explained the legislative history and purpose of the original Oregon Safe Employment Act in *Hillman:*

> The act regulating safety of places of employment was enacted by Oregon Laws 1920, ch. 48, p. 84, and is now codified, together with other related acts, in ORS ch. 654. . . . [T]he safety act . . . is not an amendment of the workmen's compensation law but a separate and independent act.
>
> . . .
>
> It is worthy of note that the safety act was one of a series of acts adopted in the early part of this century for the protection of workmen. . . . The basic purpose of the safety act is clearly evident from the language of the first section thereof, now ORS 654.010. . . .
>
> The second section of the act, now ORS 654.015, prohibits any employer, owner or lessee of any real property from constructing or maintaining any place of employment that is not safe.

*Hillman,* 213 Or. at 287, 289–90, 323 P.2d at 675, 676–77 (footnotes omitted); *see*

*Miller v. Georgia–Pacific Corp.*, 294 Or. 750, 752 n. 1, 662 P.2d 718, 719 n. 1 (1983) (citing the *Hillman* historical summary of Oregon's long-standing "safety act").

The current OSEA was enacted in 1973, "retain[ing] many provisions from the previous safety legislation[.]" *Miller*, 294 Or. at 752, 662 P.2d at 719. The Act "was enacted for essentially the same reasons as its predecessor safety acts were enacted— 'to assure as far as possible safe and healthful working conditions for every working man and woman in Oregon. . . .' " *Id.*, 294 Or. at 759, 662 P.2d at 723 (quoting Or. Rev. State. § 654.003) (emphasis omitted).

The OSEA defines "Employer" to include, in pertinent part, "[a]ny person who has one or more employees," and "[a]ny successor or assignee of an employer." O.R.S. § 654.005(5)(a) & (c). An "Employee" includes, in pertinent part, "[a]ny individual . . . who engages to furnish services for a remuneration, financial or otherwise, subject to the direction and control of an employer," and "[a]ny individual who is provided with workers' compensation coverage as a subject worker. . . ." O.R.S. § 654.005(4)(a) & (c). An "Owner" is "every person having ownership, control or custody of any place of employment or of the construction, repair or maintenance of any place of employment." O.R.S. § 654.005(6). A "[p]lace of employment" includes:

> (A) Every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employee works or is intended to work; and

> (B) Every place where there is carried on any process, operation or activity re-

lated, either directly or indirectly, to an employer's industry, trade, business or occupation. . . .

O.R.S. § 654.005(8)(a); *see Miller*, 294 Or. at 759, 662 P.2d at 723 (quoting the statute).

■ The OSEA does not expressly provide a civil remedy to those injured by violations of the Act. As a result, such a "right of action must exist by implication, if at all." *Eduardo v. Clatsop Comm. Resource Dev. Corp.*, 168 Or.App. 383, 389– 90, 4 P.3d 83, 87 (2000). The court is mindful that "[w]hen interpreting state law, federal courts are bound by decisions of the state's highest court." *Williamson v. Munsen Paving LLC*, No. CV 09–736, slip op., 2010 WL 1063575, at *4 (D.Or. Mar. 2, 2010) (Acosta, MJ) (Findings & Recommendation on Munsen's 12(b)(6) motion to dismiss) (hereafter "*Williamson III* ") (citing *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995)).

This court previously had occasion to examine Oregon case law on a somewhat similar issue, but in the context of an action brought by a *non-employee.* In *Wickham v. Apollo, Inc.*, No. 05–0352, 2005 WL 1705028 (D.Or. June 28, 2005), the plaintiff Wickham was a passenger in a car that collided with a backhoe parked on the shoulder of the highway. The plaintiff was injured, and he sued Apollo, which owned the backhoe, for damages on theories of negligence and negligence *per se.* On the latter claim, Wickham claimed Apollo had violated a regulation that required the placement of warning devices near the backhoe to alert others to its location. The regulation at issue was a federal OSHA regulation, adopted by ref-

erence in OAR 437–003–0001(15)(a).[3] The OSEA provided the statutory authority for Oregon's adoption of the regulation. *See Wickham,* 2005 WL 1705028, at *1 & n. 1.

■ The defendant moved to dismiss the negligence *per se* claim, asserting that

> 1) an alleged violation of the regulation cannot form the basis for a statutory negligence claim in Oregon; 2) plaintiff [was] not an employee of Apollo and therefore not within the class of persons intended to be protected by the regulation; and 3) any provision of [OSEA], the statutory authority for Oregon's adoption of the regulation, that provides for a private right of action by a non-employee is *ultra vires.*

*Id.* My examination of Oregon case law on the issues in *Wickham* is instructive in the present case:

> In *Shahtout v. Emco Garbage Co.,* 298 Or. 598, 600, 695 P.2d 897 (1985), the court explained the effect of a governmental regulation in actions for damages, distinguishing between liability for damages based on violation of the rule, and the significance of such a violation in establishing common law liability. A law that is designed to protect some or all persons against a particular risk of harm may expressly or impliedly give persons within the protected class a right to recover damages if noncompliance with the law results in harm of the kind the law seeks to prevent. *Id.,* citing *Nearing v. Weaver,* 295 Or. 702, 670 P.2d 137 (1983). See *also Bellikka v. Green,* 306 Or. 630, 650, 762 P.2d 997 (1988) ("This court has recognized that there are instances where the legislature

has, in effect, created a tort."). Such claims are referred to as statutory negligence claims, or statutory torts. *Bellikka,* 306 Or. at 636, 762 P.2d 997. Such statutory torts exist "independent of any parallel common-law claim and can be pleaded independently, with or without an accompanying common-law claim." *Id.* at 650, 762 P.2d 997.

Statutory torts are not "negligence *per se.*" *Shahtout,* 298 Or. at 601, 695 P.2d 897. The phrase "negligence *per se*" can apply only to cases brought on a theory of liability for negligence rather than liability grounded in obligations created by statute. *Id.* at 600, 695 P.2d 897. Even when a statute neither expressly nor impliedly gives a person injured by its violation any claim for damages, the injured person may have such a claim under existing common law negligence theories. The statutory violation may be evidence of the common law negligence. *Id.*

A plaintiff may assert both statutory and common law theories of liability on the same facts. *Id.* The court in *Shahtout* explained:

> In a negligence case, the plaintiff must show that defendant did not meet an applicable standard of due care under the circumstances. When a plaintiff invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the . . . legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negli-

---

3. "The Oregon Administrative rules adopt by reference specific provisions of the Code of Federal Regulations." *George v. Myers,* 169 Or.App. 472, 476 n. 4, 10 P.3d 265, 268 n. 4 (2000).

gence as a matter of law. This court has long held that violations of statutory safety rules by themselves provide the element of negligence with respect to those risks that the rules are meant to prevent, at least unless the violator shows that his conduct in fact did not violate the rule under the circumstances.

*Id.* at 601, 695 P.2d 897.

*Wickham,* 2005 WL 1705028, at **1–2.

I went on to consider whether the plaintiff in the case had stated a claim for either negligence *per se* or statutory tort:

Claims based on theories of statutory tort or negligence *per se* require both an initial determination that the statute or rule which is the source of the defendant's duty protects a class of persons of which the plaintiff is a member by proscribing or requiring certain conduct and that the harm that the defendant has inflicted is of the type against which the rule is intended to protect. *Beeman v. Gebler,* 86 Or.App. 190, 193, 738 P.2d 605 (1987). To state a claim, plaintiff must show that the statute provides a private right of action under a four part test: 1) defendants violated a statute; 2) plaintiff was injured as a result of that violation; 3) plaintiff was a member of the class of persons meant to be protected by the statute; and 4) plaintiff suffered the type of injury the statute was intended to protect against. *McAlpine v. Multnomah County,* 131 Or.App. 136, 144, 883 P.2d 869 (1994). An additional requirement, when the claim is based on violation of an administrative regulation rather than a statute, is that even when the regulation meets the *McAlpine* factors, its terms permitting the imposition of private liability must not be *ultra vires. Ettinger v. Denny Chancler Equipment Co., Inc.,* 139 Or.App. 103, 107, 910 P.2d 420 (1996).

*Wickham,* 2005 WL 1705028, at *2. I observed that "[i]n *Shahtout,* 298 Or. at 604, 695 P.2d 897, the court held that the OSEA does not extend its coverage to private causes of action by a non-employee against an employer.... However, the court made it clear that violation of the regulation was relevant to the determination of due care in a common law negligence claim[.]" *Id.,* 2005 WL 1705028, at *3 (citing *Shahtout,* 298 Or. at 603, 695 P.2d 897).

I concluded, in *Wickham,* that the agency adopting the safety regulation at issue "had not been granted the authority to establish a cause of action in favor of a person not within the purview of worker safety regulations. To the extent this regulation is logically read to establish such a cause of action, it is *ultra vires.*" *Id.,* 2005 WL 1705028, at *4 (relying on *Ettinger v. Denny Chancler Equipment Co.,* 139 Or. App. 103, 107, 910 P.2d 420, 422 (1996)). I further noted, however, that violation of a regulation "may be relevant evidence to show common law negligence[.]" *Id.*

My ultimate conclusion in *Wickham* is not applicable here, because the case involved a person "not within the purview of worker safety regulations." *Id.* Cain, on the other hand, clearly falls within the purview of statutes and regulations adopted for the protection of workers in Oregon. My analysis in *Wickham* illustrates that Cain's OSEA claims in the present case are based on theories of statutory tort rather than on negligence *per se.* I find that Cain can bring a private action for damages under the OSEA if his OSEA claims meet the four-part test recognized by the court in *McAlpine v. Multnomah County,* 131 Or.App. 136, 144, 883 P.2d 869, 873 (1994).

I therefore will examine the defendants' motions for summary judgment on each of Cain's claims, applying the *McAlpine* test, where appropriate, to claims based on violations of the OSEA.

### First Claim for Relief: Violation of OSEA § 654.015 and Second Claim for Relief: Violation of OSEA § 654.010

Cain's First Claim for Relief is asserted against all of the defendants[4] for their alleged violation of OSEA § 654.015, which provides, "No employer or owner shall construct or cause to be constructed or maintained any place of employment that is unsafe or detrimental to health." O.R.S. § 654.015.

His Second Claim for Relief is asserted only against Bovis, for allegedly violating OSEA § 654.010, which provides:

Every employer shall furnish employment and a place of employment which are safe and healthful for employees therein, and shall furnish and use such devices and safeguards, and shall adopt and use such practices, means, methods, operations and processes as are reasonably necessary to render such employment and place of employment safe and healthful, and shall do every other thing reasonably necessary to protect the life, safety and health of such employees.

O.R.S. § 654.010 Although Cain's Second Claim is brought only against Bovis, one of the allegations in support of his First Claim for Relief is that the defendants failed to provide him "with a safe place to work in violation of ORS 654.010." Dkt. # 91, ¶ 11(f).

O.R.S. § 654.015 clearly applies to two classes of actors, to-wit: employers, and

owners or lessees of real property that constitutes a "place of employment." Thus, for Cain to prevail on his claim that Bovis, Willamette Valley, and Wylie Steel violated § 654.015, he must show, among other things, that each of those defendants either was his employer, or was an owner or lessee of real property constituting a place of employment at the time of the accident.

Similarly, § 654.010 clearly applies only to employers. The defendants assert that none of them qualifies as an "employer" for purposes of these statutes. *See* Dkt. # 121, pp. 20–22; Dkt. # 128, pp. 8–14.; Dkt. # 133, pp. 16–19. Willamette Valley further argues that although it owned the premises where Cain was injured, Cain has offered no evidence, either through expert testimony or otherwise, that Willamette Valley violated the regulations underlying § 654.015, nor were the premises a "work place" as contemplated by the OSEA. *See* Dkt. # 121, pp. 21–23; Dkt. # 154, pp. 24–26.

Thus, the first issue for consideration is whether any of the defendants was Cain's "employer" for purposes of the OSEA. There is no question, and Cain does not argue, that Willamette Valley or Wylie Steel was ever Cain's employer. Thus, I address this issue only with respect to Bovis.

### Bovis's Motion

Cain argues Bovis was his "indirect employer" under the ELA, subjecting Bovis to liability for violation of the OSEA. Dkt. # 141, pp. 32–35. The Oregon Court of Appeals has held repeatedly that, "[u]nlike the ELA, the OSEA does not extend its coverage to indirect employees." *German v. Murphy*, 146 Or.App. 349, 932 P.2d 580

---

4. I recommended, *infra* pp. 1261–62, that ESA be granted summary judgment on this claim.

(1997) (citing *Flores v. Metro Machinery Rigging, Inc.*, 99 Or.App. 636, 641, 783 P.2d 1024, 1027 (1989), *rev. den.*, 309 Or. 521, 789 P.2d 1386 (1990)); *accord George v. Myers*, 169 Or.App. 472, 477, 10 P.3d 265, 268 (2000). Cain argues the Oregon Supreme Court's decision in *Miller* is at odds with the later Oregon Court of Appeals decisions. He maintains that although the Oregon Court of Appeals has "held that OSEA claims cannot be made against indirect employers, . . . the Oregon Supreme Court emphatically has held that they can." Dkt. # 141, p. 32 (citing *Miller*, 294 Or. 750, 662 P.2d 718 (1983)).

Cain relies on the *Miller* court's ruling that the plaintiff could maintain a claim against an indirect employer *under the ELA* based on the defendant's alleged violation of the OSEA. *Id.*, p. 34. Cain confuses the issue. As to his First and Second Claims for Relief, the issue is not whether he can maintain *an ELA claim* against Bovis, supported by Bovis's alleged violation of the OSEA. Rather, the issue is whether he can maintain stand-alone claims (i.e., not ELA claims) against Bovis, as an indirect employer, for violations of the OSEA itself. I find that he cannot. "[T]he purpose of the [OSEA] is to require an employer to take necessary steps to protect its own employees, not those of other employers." *Flores v. Metro Machinery Rigging, Inc.*, 99 Or.App. at 636, 641, 783 P.2d 1024, 1027 (1989). The Oregon Supreme Court's holding in *Miller* is not to the contrary.

■ Cain's First and Second Claims for Relief against Bovis are both premised on Bovis's alleged violations of the OSEA. Bovis was never Cain's direct employer. Because OSEA liability does not lie against an indirect employer, and because there is no argument that Bovis ever was

an "owner" of the premises for purposes of the OSEA, I find that Cain has failed to state a cognizable claim against Bovis for violations of the OSEA, and Bovis's motion for summary judgment on Cain's first two claims for relief should be granted.

**Willamette Valley's Motion**

Moving on to Cain's claim that Willamette Valley violated OSEA § 654.015, Cain does not attempt to argue that Willamette Valley was his employer. Rather, he claims Willamette Valley was an "owner" for purposes of liability under OSEA § 654.015. Cain relies on *Williamson v. Munsen Paving, LLC*, No. CV–09–736, slip op., 2009 WL 4505443 (D.Or. Nov. 30, 2009) (King, J) ("*Williamson I*"), and *Williamson v. Munsen Paving, LLC*, 2010 WL 1224232 (D.Or. Mar. 19, 2010) (King, J) ("*Williamson II*"), in which Judge King twice affirmed Findings and Recommendations by Judge Acosta in a case brought under the OSEA. Williamson, an employee of Wikel Excavation, LLC, was waiting with a pickup truck to pick up a load of gravel at Munsen's facility. A Munsen employee backed up a dump truck he was driving, hitting Williamson and driving over Williamson's left leg and right foot. Williamson sued Munsen to recover damages for his injuries. He sued on theories of negligence, violation of the ELA, and violation of the OSEA.

Munsen moved to dismiss, arguing, as to the OSEA claim, that "the OSEA was adopted for the protection of employees against their direct employers, and that Williamson cannot plead membership in the group intended to be protected by the OSEA because he is not Munsen's employee." *Williamson I*, 2009 WL 4505443, at *3. Williamson responded "that the OSEA imposes liability upon owners of places of

employment, not only direct employers. Thus, Williamson contend[ed], as applied to owners, the duties under the OSEA extend to workers of other employers." *Id.* Judge Acosta's analysis, adopted in its entirety by Judge King, is relevant to the present inquiry.

Judge Acosta noted that O.R.S. § 656.105 applies to both an employer *and an owner*, and mandates an owner's compliance with orders, decisions, rules, standards, and regulations that affect an employee's life, health, and safety. *Id.* He distinguished authorities cited by the defendant in the case, noting Williamson had not "based his OSEA claim on the premise that Munsen [was] his indirect employer," but instead relied "on the OSEA's application to owners and Munsen's undisputed status of owner of the premises where Williamson's injury occurred." *Id.*, 2009 WL 4505443, at *4 (discussing *Moe v. Beck,* 100 Or.App. 177, 180–81, 785 P.2d 781 (1991), in which the court held that "the legislature did not define as 'owner' any person with 'ownership, control *and* custody'. Rather, it defined as 'owner' any person who has 'ownership, control or custody.' ").

Judge Acosta found *Brown v. Boise–Cascade Corp.,* 150 Or.App. 391, 946 P.2d 324 (1997), to be on point:

> In *Brown v. Boise–Cascade Corp.,* 150 Or.App. 391, 946 P.2d 324 (1997), the Oregon Court of Appeals explained owners' liability under the OSEA. *Brown* expanded *Moe's* discussion by observing that although the word "owner" is ambiguous, the OSEA clearly defines an owner in the disjunctive: as a person who has *either* control, custody, or ownership of a place of employment. *Brown,* 150 Or.App. at 407, 946 P.2d 324. The *Brown* court then observed that "at

least in some circumstances, ownership of a premises where OSEA violations occur is sufficient to support negligence *per se* liability even if the defendant had no direct involvement in, or control over, the injury producing activity." *Id.* However, ownership liability under the OSEA lies "only if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Id.* at 408, 946 P.2d 324.

The *Brown* court also cited *Moe* as an example of how OSEA regulations apply to an owner. In *Moe,* driving was the ordinary and foreseeable use of the "workplace" that the defendant owned, the dump truck. Providing and maintaining adequate brakes was essential to the safe operation of that "workplace." "Thus, although regulations underlying the plaintiff's negligence *per se* claim in *Moe* did not expressly refer to owners, the defendant there was nevertheless subject to those regulations." *Brown,* 150 Or.App. at 408, 946 P.2d 324. The *Brown* court then analyzed the plaintiff's particular allegations underlying his OSEA claim based on the *Moe* analysis, and concluded that the plaintiff's cited rules pertaining to inadequate lighting did apply to the defendant owner. *Brown* and *Moe* make clear that Williamson may bring an OSEA claim against Munsen as an owner, and that he may properly rely on those regulations intended to implement the OSEA's applicability to owners. Accordingly, Williamson may base his claim against Munsen on the OSEA, because the act applies to owners such as Munsen, and he may allege that the act's implementing regulations are standards of care against which Munsen's conduct should be evaluated. Therefore, Munsen's

12(b)(6) motion should be denied to the extent that it seeks dismissal of Williamson's complaint for failing to allege a cognizable claim.

*Williamson I,* 2009 WL 4505443, at \*\*3–5.

Despite finding that Williamson's claim against Munsen was legally cognizable, the court further found that "his complaint failed to allege facts sufficient to state such a claim." *Williamson III,* 2010 WL 1063575, at \*1. The court ordered him to amend his complaint to cite the current version of the OSEA provisions upon which he relied, and to tie his factual allegations to the specific regulations upon which he relied. *See id.* Williamson filed his amended complaint, and Munsen filed a second motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), again arguing the OSEA's implementing regulations upon which Williamson relied were not applicable to owners.

Judge Acosta again relied on *Brown,* observing as follows:

> When interpreting state law, federal courts are bound by decisions of the state's highest court. *Ariz. Elec. Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir.1995). In Oregon, ownership liability lies "only if the regulation whose violation underlies the OSEA claim is one that either explicitly, or by nature, imposes obligations on owners of premises." *Brown,* 150 Or.App. at 408, 946 P.2d 324. By nature, regulations pertaining to workplace structures or safeguards apply to owners. *Id.* Conversely, requirements pertaining to work practices or methods apply to employers. *Id.*

> In *Brown,* the court concluded that the regulations cited by plaintiff pertaining to inadequate lighting did apply to

the defendant owner. *Id.* at 413, 946 P.2d 324. Explaining its holding the court stated: "We conclude that the lighting regulations at issue here do apply to owners. That is, owners are obligated, as a *structural matter,* to equip workplaces with lighting adequate for the work that ordinarily would occur within that type of workspace." *Id.* (emphasis added).

> The *Brown* court cited *Moe v. Beck,* 100 Or.App. 177, 785 P.2d 781 (1991), as an example of how OSEA regulations apply to an owner. *Brown,* 150 Or.App. at 408, 946 P.2d 324. In *Moe,* driving was the ordinary and foreseeable use of the workplace owned by the defendant, namely the dump truck. *Id.* Providing and maintaining adequate brakes was essential to the continuing *structural integrity and safe operation* of that workplace in its ordinary and intended manner. *Id.* (emphasis added). "Thus, even though the regulations in *Moe* did not expressly refer to owners, the defendant there was nevertheless subject to those regulations." *Id.*

*Williamson III,* 2010 WL 1063575, at \*4.

 Based on the *Williamson* analyses, I find, as a threshold matter, that Cain has stated a claim against Willamette Valley, as an "owner," for violation of OSEA § 654.015. The owner of the premises where Cain was working was obligated, as a structural matter, to ensure the fixed ladder complied with applicable regulations and was safe for Cain and others to use. Willamette Valley attempts to distinguish the *Williamson* case on its facts, *see* Dkt. # 154, pp. 23–24, but the court is not persuaded by the hospital's argument in that regard.

Willamette Valley further argues Cain has offered no expert testimony to support

his allegation that the hospital violated any of the regulations cited by Cain in his First Claim for Relief, nor was the area where Cain's accident occurred a "place of employment" as contemplated by OSEA § 654.015. *See* Dkt. # 121, pp. 22–23; Dkt. # 154, pp. 24–26. Cain counters the first of these arguments by asserting that § 654.015, together with the rest of the OSEA, merely " 'codifies the common-law duty to provide safe places of employment,' " and although he "may cite safety code violations to plead an OSEA violation, . . . the safety codes are nothing more tha[n] standards of care against which to judge a defendant's conduct." Dkt. # 142, pp. 17, 18 (citing *Williamson I*, 2009 WL 4505443, at *5). Though Cain does not attack Willamette Valley's argument head-on, he apparently believes expert testimony is not required in order for a jury to weigh the hospital's conduct against the regulatory requirements as a standard of care. *See id.*

This determination is one that cannot be made at this stage of the proceedings. Under Oregon case law, whether the evidence is sufficient for the court to determine that the jury can weigh the issue "solely on the basis of inference and common knowledge," without expert testimony, will depend on the specific evidence introduced at trial. *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 69, 577 P.2d 1322, 1327 (1978) (considering whether expert testimony was required in order to show a practicable alternative design). In its motion for summary judgment, Willamette Valley has not addressed the type and degree of proof it claims would be required to show each of the separate violations

alleged by Cain in support of his First Claim for Relief, nor has Cain engaged in such an undertaking. Indeed, it would appear that such an exercise would be futile at this stage because the parties' conflicting arguments undoubtedly would only serve to reveal the existence of numerous issues of material fact that must be resolved at trial, rather than on a motion for summary judgment.

Willamette Valley further argues that the penthouse roof was not a "place of employment" as contemplated by OSEA § 654.015. Dkt. # 154, pp. 24–25.[5] A "Place of employment" includes:

(A) Every place, whether fixed or movable or moving, whether indoors or out or underground, and the premises and structures appurtenant thereto, where either temporarily or permanently an employee works or is intended to work; and

(B) Every place where there is carried on any process, operation or activity related, either directly or indirectly, to an employer's industry, trade, business or occupation. . . .

O.R.S. § 654.005(8)(a). The hospital argues none of its employees knew Cain would be in the area where the accident occurred; none of its employees used the ladder or the penthouse roof area; and the ladder was only used by people who were not the hospital's employees, but instead were independent contractors. Dkt. # 154, p. 25.

None of these arguments shows the area was not Cain's "place of employment" at the time of the accident. Clearly, Cain was working temporarily in the area.

---

**5.** Because Willamette Valley only raised this argument in its reply brief, Cain has not had

an opportunity to respond to the argument.

Cain qualifies as "an employee" under the OSEA, even though he was not *the hospital's* employee. *See* O.R.S. § 654.005(4)(a) (defining "Employee"). Cain was a member of the class of persons OSEA § 654.015 was meant to protect, and he suffered the type of injury the statute was intended to protect against. *See McAlpine, supra.* I find that the place where Cain's accident occurred was a "place of employment" for purposes of OSEA § 654.015, and the hospital was an "owner" of that place of employment. I further find that issues of material fact preclude summary judgment as to whether Willamette Valley violated the statute. I therefore recommend Willamette Valley's motion for summary judgment be denied as to Cain's First Claim for Relief.

### Wylie Steel's Motion

■ Wylie Steel asserts that OSEA § 654.015 does not apply to it because is was never Cain's employer, nor does Cain make such an allegation. Dkt. # 128, pp. 8–9. Cain responds that Wylie Steel is contractually liable to satisfy the OSEA's requirements, asserting that "[i]n Oregon, contractual obligations may define the scope of duty for purposes of tort liability." Dkt. # 143, p. 13 (citations omitted); *see id.*, pp. 12–15. Cain's argument misses the mark. While Wylie Steel's contractual obligations may be relevant to show its duty of care for purposes of Cain's negligence claim, any such contractual obligations are irrelevant to whether Wylie Steel is an entity covered by the OSEA.

Wylie Steel further argues that even if OSEA § 654.015 did apply to it, Cain has failed to show Wylie Steel violated any of the regulations and standards cited by Cain in support of his First Claim for Relief. *See* Dkt. # 128, pp. 9–14. Cain has failed to respond to Wylie Steel's argu-

ments regarding these specific allegations. *See* Dkt. # 143, Cain's response to Wylie Steel's motion. Moreover, as Wylie Steel notes in its reply, Cain has conceded that a claim for violation of OSEA § 654.015 cannot lie against ESA, an entity that moved for partial summary judgment on that claim based on the lack of any type of employment relationship with Cain. Wylie Steel is similarly situated, in that it lacks any type of employment relationship with Cain.

I find that an OSEA claim cannot lie against Wylie Steel, and recommend that Wylie Steel's motion for summary judgment be granted as to Cain's First Claim for Relief.

### THIRD CLAIM FOR RELIEF: PREMISES LIABILITY

Cain's Third Claim for Relief is asserted against Willamette Valley and Bovis, for premises liability. Cain claims the hospital "owned or had possession of the premises," or alternatively, Bovis "had possession of the premises, including the rooftop where [Cain] was injured." Dkt. # 91, ¶ 15. He claims these defendants failed to discover and warn invitees of "conditions of the premises that created an unreasonable risk of harm to the invitee, including the unsafe ladder." *Id.* He further claims they breached their duty of care "by installing or allowing the installation of a ladder that was not safe." *Id.*, ¶ 16.

■ A threshold question here is Cain's status at the time of the accident. "Oregon adheres to the traditional rules governing the liability of an owner or possessor of land, under which the duties that the occupier owes to a person who comes on the land depend on whether the person is an invitee, licensee, or trespasser."

*Walsh v. C & K Market, Inc.,* 171 Or.App. 536, 539, 16 P.3d 1179, 1181 (2000); *accord Stewart ex rel. Hill v. Kralman,* 240 Or. App. 510, 517, 248 P.3d 6, 9 (2011). Clearly, Cain was not a trespasser; the issue is whether he was an invitee or a licensee.

The *Walsh* court described two tests used in Oregon to determine whether one who comes onto land is an invitee:

> Oregon has adopted two tests for determining whether a person is an invitee. Under the first, the "economic advantage" test, anyone who comes on the premises for business that concerns the occupier, with the occupier's express or implied invitation, is an invitee. *Id.* at 191–92, 421 P.2d 370; *Reed v. Jackson County,* 105 Or.App. 24, 26–27, 803 P.2d 1194 (1990), *rev. den.* 311 Or. 261, 808 P.2d 1015 (1991). Under the second, the "invitation" test, a person is an invitee when the occupier, expressly or impliedly, leads the person to believe that it intended visitors to use the premises for the purpose that the person is pursuing and that the use was in accordance with the intention or design for which the premises were adapted or prepared. *Parker v. Hult Lumber & Plywood Co.,* 260 Or. 1, 8, 488 P.2d 454 (1971); *Reed,* 105 Or.App. at 26–27, 803 P.2d 1194.
>
> . . .
>
> We find section 332 [of *Restatement (Second) of Torts* (1974) ] and the comments to it helpful in resolving the issues in this case. Section 332 provides:
>
> "(1) An invitee is either a public invitee or a business visitor.
>
> "(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> "(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."
>
> A person whom section 332 calls a "public invitee" is, under the Oregon cases, an invitee under the invitation test, while a person whom section 332 calls a "business visitor" is an invitee under the economic advantage test. [Footnote omitted.]

*Walsh,* 171 Or.App. at 539–40, 16 P.3d at 1181–82.

■ A licensee, on the other hand, "is one who comes upon the premises for his own purposes with the consent of the possessor." *Rich v. Tite–Knot Pine Mill,* 245 Or. 185, 191, 421 P.2d 370, 373 (1966) (citation omitted). Further, a person "may be a licensee or invitee for one purpose or part of the premises and not for another." *Id.,* 245 Or. at 192, 421 P.2d at 374 (citations omitted).

■ The possessor's duties differ depending on whether the person who comes upon land is an invitee or a licensee. The possessor has a duty to warn an invitee of latent dangers, and "also has an affirmative duty to protect an invitee against those dangers in the condition of the premises of which he knows or should have known by the exercise of reasonable care." *Id.,* 245 Or. at 191, 421 P.2d at 373. With regard to a licensee, the possessor "owes no duty ... to put his premises in a safe condition but is under an obligation to disclose to the licensee any concealed, dangerous conditions of the premises of which he has knowledge." *Id.,* 245 Or. at 191, 421 P.2d at 373–74 (citations omitted).

■ Under the circumstances of this case, Cain was an invitee at the time

of the accident. "Workmen coming onto the premises to perform construction or repair work are, in effect, invitees, no matter whose employees they may be, and the duty owed them is generally analogous to that owed to any business invitee...." *Dutton v. Donald M. Drake Co.*, 237 Or. 419, 425, 391 P.2d 761, 764 (1964) (internal quotations, citation omitted). As a result, the possessor of the premises at the time of the accident owed Cain a duty to protect him against those dangers that were known to the possessor, or about which the possessor should have known by the exercise of reasonable care.

The next question is who qualifies as "possessor" of the premises in question at the time of the accident. Neither Willamette Valley nor Bovis addresses the issue. *See* Dkt. # 121, pp. 23–28; Dkt. # 154, pp. 26–28; Dkt. # 133, Dkt. # 150.

■ Oregon has adopted the *Restatement (Second) of Torts* (1965), which defines a "possessor of land" as " 'a person who is in occupation of the land with intent to control it.' " *Fireman's Fund Am. Ins. Cos. v. United States*, 482 F.Supp. 893, 896 (D.Or.1979) (quoting *Restatement (Second) of Torts* § 328E(a)). It seems axiomatic that Willamette Valley was a possessor of the premises where Cain's accident took place. *But see Fireman's Fund, supra* (where the court held the United States Forest Service was not the possessor of a roadway where an accident occurred because it had not formally accepted the road under the terms of its contract with the general contractor).

The issue is not as clear with regard to Bovis's status, and the parties have not tendered any applicable portions of Bovis's contract with the hospital for the court's consideration here. Neither Bovis nor

Cain has offered evidence sufficient for the court to determine, at this stage, whether Bovis could or should be considered a possessor of the premises for purposes of Cain's Third Claim for Relief. For the time being, on this record, the court will assume for purposes of the following discussion that both the hospital and Bovis were possessors of the premises at the time of the accident. References to "the defendants" in this section refer only to Willamette Valley and Bovis.

■ Willamette Valley argues "it cannot be liable for injuries that result from hazards which accompany the specialized work for which the independent contractor was hired." Dkt. # 121, p. 25 (citing *Esko v. Lovvold*, 272 Or. 27, 30–31, 534 P.2d 510, 512 (1975); *Yowell v. General Tire & Rubber*, 260 Or. 319, 325, 490 P.2d 145, 148 (1971)). Although generally, one who employs an independent contractor is not liable for injuries caused by "a tortious act or omission of the contractor or his servants," *Macomber v. Cox*, 249 Or. 61, 65, 435 P.2d 462, 464 (1967) (citing *Restatement (Second) of Torts* § 409 (1965)), there are numerous exceptions to this rule. Among others, when the employer of the independent contractor is under a *statutory* duty to protect the safety of others, that statutory duty is nondelegable. *See Johnson v. Salem Title Co.*, 246 Or. 409, 413–14, 425 P.2d 519, 522 (Or.1967) (citing 2 Harper & James, *Torts* § 26.11 at 1406 (1956), and noting that "[t]his exception to nonliability has been adopted by the American Law Institute," citing *Restatement (Second) of Torts* § 424 (1965)).

Moreover, the hospital's argument is unavailing as regards "the specialized work for which the independent contractor was hired." Although Cain and his em-

ployer were experts in the field of roofing, they were not experts in the construction or maintenance of ladders. *See Yowell v. General Tire & Rubber,* 260 Or. 319, 328, 490 P.2d 145, 149–50 (citations omitted).

One of the cases discussed by the *Yowell* court is instructive with regard to the defendants' liability as possessors of the premises. In *Wriglesworth v. Doyle,* 244 Or. 468, 417 P.2d 999 (1966), Doyle, the defendant building owner, hired an electrical company, Nelson, to perform electrical work on a remodel of Doyle's building. Wriglesworth was an electrician who worked for Nelson.

At some time in the past, prior to Doyle's ownership of the building, the ceiling in one of the rooms had been lowered about six feet. This "false ceiling" was constructed of sixteen–foot–long pieces of 2″ × 6″ lumber, joined to the walls with wooden plates, and covered with a material described as "firetex." The false ceiling was to be removed during the remodel. *See id.,* 244 Or. at 469–71, 417 P.2d at 1000.

To access some wires that were attached to electrical boxes in the original ceiling, Wriglesworth climbed onto the false ceiling (despite the fact that Nelson had ladders available at the site). After about five minutes, the false ceiling partially gave way, and Wriglesworth fell and was injured. He sued Doyle for damages under a premises liability theory. Doyle testified that he was unaware Wriglesworth was standing on the false ceiling. In addition, Doyle, himself, had never been on top of the false ceiling, and he had never tested it. What caused the false ceiling to fail remained unknown. *Id.*

Trial proceeded on the theory that Wriglesworth was a business invitee of Doyle's at the time of the accident, a theory the appellate court agreed was appropriate. *Id.* (citing *Dutton,* 237 Or. at 425, 391 P.2d at 764). The court described Doyle's duty to Wriglesworth as follows:

An occupier of land is liable to an invitee if he 'knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees,....' 2 *Restatement (Second), Torts* § 343. *Approved in Lee v. Meier & Frank Co.,* 166 Or. 600, 605, 114 P.2d 136 (1941). This implies that 'the possessor (land occupier) will take reasonable care to ascertain the actual condition of the premises.' 2 *Restatement (Second), Torts,* § 343, Comment D. However, the extent of the duty to inspect is dependent upon the circumstances. This is stated in Comment E. of 2 *Restatement (Second), Torts,* § 343, as follows:

'In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance.... [O]ne who goes on business to the executive offices in a factory is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety. If, however, on some particular occasion, he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory.'

*Id.,* 244 Or. at 471–72, 417 P.2d at 1000–01.

The trial court denied Doyle's motions for involuntary nonsuit and to withdraw the negligence issues from the jury. The

Oregon Supreme Court reversed, holding that "under the circumstances, a reasonably prudent building owner had no duty to make such an inspection as would have been necessary to discover the defective condition, if there were any." *Id.,* 244 Or. at 472, 417 P.2d at 1001. The court observed:

> There is no evidence that the defendant knew of any defect. There is no evidence that there was any manifestation which would have caused the defendant, as a reasonably prudent landowner, to suspect that there might be a defective condition and thus make a further inspection. As a general proposition, when a land occupier invites persons upon his land to make alterations or repairs, such occupier has no duty to make an inspection to determine that the premises are safe unless a reasonably prudent land occupier would be aware of circumstances indicating that the premises might not be safe and, therefore, would make an inspection to determine the condition of the premises.

*Id.,* 244 Or. at 472–73, 417 P.2d at 1001. In reaching this conclusion, the court relied on *McCarthy v. Hiers,* 81 Ga.App. 365, 59 S.E.2d 22 (1950), quoted with approval in a federal tort claims case, *Brown v. United States,* 122 F.Supp. 1662 (D.N.Mex.1954). In both of those cases, the plaintiffs were painters who fell through a defective roof. In both cases, the courts held the landowners were not liable when there was nothing that should have given the landowners notice that the roof was defective. *Id.*

 Wriglesworth's status as Nelson's employee on the remodeling job is similar to Cain's status as McDonald's employee on the hospital remodel. In order to prevail on his claim that either of the defendants is liable as a possessor of the premises in question, Cain must show something existed that should have put the defendants on notice that the ladder in question might be defective in some way, giving rise to a duty on their part to inspect the ladder and to warn Cain of risks inherent in his use of the ladder. Contrary to the *Wriglesworth* holding, however, I find the issue is one of fact for the jury in this case.

On one hand, excerpts of Cain's deposition offered by the parties would appear to belie a claim that the defendants would have had reason to know something was amiss with regard to the ladder, giving rise to a duty to inspect the ladder. Cain testified that if he observed a defect in a ladder, it was "just common sense" that he would not use it. Dkt. # 144, Ex. 1, Cain Depo., p. 71. If he had had any concerns about this particular ladder, he would have reported them to Bovis's representative, Del Allen. Cain specifically stated that on the day in question, the ladder "looked fine to [him]." Dkt. # 122, Ex. 9, Cain Depo., p. 116. He had used this particular ladder more than once prior to the date of his accident, and other than finding the ladder a bit awkward to use, he did not recall having any problems or concerns about the ladder on those occasions, or when he began climbing the ladder on the day of his accident. Dkt. # 122, Ex. 9, Cain Depo., pp. 114–16, 119.

Nevertheless, whether the defendants knew or should have known the ladder might be, or was, defective or dangerous ultimately presents an issue of foreseeability. "Ordinarily, foreseeability is a fact question for the jury." *McPherson v. State ex rel. Dept. of Corrections,* 210 Or. App. 602, 152 P.3d 918 (2007). It is only "in an extreme case," where the court can

determine that "no reasonable factfinder could find the risk foreseeable," that resolution of the issue should be made by the court rather than the jury. *Id.* (citing *Fazzolari v. Portland School District No. 1J,* 303 Or. 1, 12, 734 P.2d 1326, 1333 (1987); *Donaca v. Curry Co.,* 303 Or. 30, 38, 734 P.2d 1339, 1344 (1987)); *accord Miller ex rel. Miller v. Tabor West Inv. Co.,* 223 Or.App. 700, 711, 196 P.3d 1049, 1055 (2008).

I find that here, the issue of whether or not the defendants should have foreseen that someone could be injured by using the ladder in question is an issue for the jury. I therefore recommend that Willamette Valley's and Bovis's motions for summary judgment on this issue be denied.

### FOURTH CLAIM FOR RELIEF: BOVIS'S VIOLATION OF THE ELA

Cain's Fourth Claim for Relief is brought only against Bovis, for its alleged violation of the Oregon Employer Liability Act, O.R.S. §§ 654.305 to 654.335. Cain claims Bovis and McDonald, Cain's employer, "were engaged in a common enterprise within the meaning of the [Act]"; Bovis either controlled or had the right to control the methods and manner of McDonald's work on the project; Bovis installed the ladder McDonald's employees had to use to gain access to the penthouse roof; and Bovis "failed to use every device, care, and precaution practicable for the protection and safety of employees, including Michael Cain, and violated the [Act] as set out in paragraph 11 above." Dkt. # 91, ¶¶ 17–19. Paragraph 11 of Cain's Second Amended Complaint comprises Cain's First Claim for Relief, alleging violation of the OSEA. *See id.,* ¶ 11. The court has already found, above, that the OSEA does not apply to Bovis. However, paragraph 11 also refers to alleged violations of numerous regulations relating to the design and maintenance of ladders, and general safety standards. *Id.* Evidence that Bovis violated those rules and regulations may be evidence of the statutory tort alleged here. *See Wickham,* 2005 WL 1705028 at *2 (citing *Shahtout,* 298 Or. at 600, 695 P.2d 897 (1985)).

The ELA's general requirements are set forth in O.R.S. § 654.305, which provides:

> Generally, all owners, contractors or subcontractors and other persons having charge of, or responsibility for, any work involving a risk or danger to the employees or the public shall use every device, care and precaution that is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices.

O.R.S. § 654.305.

The Act further requires compliance with all applicable orders, rules, and codes:

> All owners, contractors, subcontractors, or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliance or substance, shall see that all places of employment are in compliance with every applicable order, decision, direction, standard, rule or regulation made or prescribed by the Department of Consumer and Business Services pursuant to [the OSEA].

O.R.S. § 654.310.

All "owners, contractors, subcontractors, foremen, architects [and] other persons

having charge of the particular work" are charged with the responsibility of ensuring the requirements of the ELA are complied with. O.R.S. § 654.315.

 "The ELA applies not only to direct employers but also to 'indirect employers.'" *Brown v. Boise–Cascade Corp.,* 150 Or.App. 391, 396, 946 P.2d 324, 329 (1997) (citing *Miller v. Georgia–Pacific Corp.,* 294 Or. 750, 754, 662 P.2d 718, 720 (1983)). In *Brown,* the court explained that one of three disjunctive tests must be satisfied to trigger indirect employer liability, to-wit: "(1) the 'common enterprise' test; (2) the 'retained control' test; or (3) the 'actual control' test." *Id.*

"'common enterprise' liability requires more than having one's own employees working together with the plaintiff to further a common enterprise." *Id.* (citing *Sacher v. Bohemia, Inc.,* 302 Or. 477, 485, 731 P.2d 434, 439 (1987)). "Rather, the defendant must exercise 'control or charge over the activity or instrumentality that causes the injury[.]'" *Id.* (citing *Sacher,* 302 Or. at 486, 731 P.2d at 439–40). There must actually be "a causal link between the defendant's involvement in joint work and the plaintiff's injury." *Id.,* 150 Or. App. at 397, 946 P.2d at 330. The "retained control" test requires that the defendant retain "a right to control ... the manner or method in which the risk-producing activity [was] performed." *Id.,* 150 Or.App. at 398, 946 P.2d at 330 (citing *Miller,* 294 Or. at 754, 662 P.2d at 720). And the "actual control" test requires that the defendant actually control the manner or method in which the risk-producing activity is performed. *Miller,* 294 Or. at 754, 662 P.2d at 720.

In the present case, viewing the evidence in the light most favorable to Cain,

as the non-moving party, the ELA could apply to Bovis under any of the three tests. The evidence establishes that Cain's employer, McDonald, and Bovis were joint participants in the renovation of the hospital. Whether, at the time of the injury, Cain was acting in concert with, under the retained control of, or even under the actual direction of Bovis, through its representative, Del Allen, is a hotly-disputed issue of fact.

 Bovis argues that regardless of whether the ELA applies to it as Cain's indirect employer, it cannot be held liable under the Act even if the ladder did not meet the applicable codes and specifications. Bovis contends it is undisputed that "the ladder at issue in this action had no obvious defects." Dkt. # 133, p. 13. It was not deformed and did not detach from the building. Instead, Cain claims the ladder failed to meet applicable code requirements. Bovis argues that in order to have discovered these alleged defects, "its personnel would have had to physically measure every part of the ladder and compare it to OR OSHA, OAR and C.F.R. code sections, although it is undisputed that code compliance was the responsibility of the project architect." *Id.,* p. 14. Bovis argues it was not, as general contractor, required to double-check the design work of ESA, which was a licensed, reputable, experienced architectural firm. *Id.* Bovis maintains that as a general contractor, it cannot be held liable for "design decisions over which it maintained no control." *Id.,* p. 13.

Cain responds that Bovis's duty under the ELA was nondelegable, and the reasonableness, or lack thereof, of holding a general contractor liable for design decisions made by the architect is irrelevant to the determination of whether Bovis met its

duty to do everything practicable to maintain a safe workplace. *See* Dkt. # 141, pp. 27–30.

I find there are numerous issues of material fact that preclude summary judgment in Bovis's favor on this issue. First, there are questions of fact regarding Del Allen's role at the time of the accident. It is not clear whether Allen simply accompanied Cain, assisted Cain, participated in the decision to conduct the roof leak test, or made the decision to conduct the test on his own and then directed Cain how to do it.

Second, there are questions of fact regarding what actions Bovis took, or failed to take, to ensure the workplace was in compliance with the applicable rules and regulations, as required by ELA § 654.310. In this regard, the court is not persuaded by Bovis's argument that at the time of the accident, no "active construction site" existed. *See* Dkt. # 150, pp. 14–15. Regardless of whether Bovis "had demobilized," as it alleges, or whether OSHA "determined that the worksite belonged to Mr. Cain's employer, McDonald & Wetle," Dkt. # 150, p. 15, the accident site nevertheless constituted a "place of employment" as defined by the OSEA and the ELA. *See* O.R.S. § 654.005(8)(a). As such, under the ELA, it was Bovis's duty, as Cain's indirect employer, to take every practicable step "for the protection and safety of life and limb," and to ensure compliance with all applicable orders, rules, and regulations prescribed pursuant to the OSEA. *See* O.R.S. §§ 654.305, 654.310. Bovis's argument that "the act of climbing a fixed vertical ladder" was not "work involving a risk of substantial dan-

ger" within the meaning of § 654.305 itself presents an issue of fact for the jury's determination.[6]

Third, there are questions of fact regarding whether Bovis complied, or failed to comply, with any of the applicable statutes and regulations. (Unlike Wylie Steel, Bovis has not undertaken to itemize and attempt to refute each of the violations alleged by Cain.)

In summary, I find that on this record, substantial issues of material fact exist that preclude summary judgment, and I recommend Bovis's motion for summary judgment be denied on Cain's Fourth Claim for Relief, for violation of the ELA.

### *FIFTH CLAIM FOR RELIEF: NEGLIGENCE*

 Cain's Fifth Claim for Relief alleges that all of the named defendants breached their "duty to ensure access to the roof was reasonably safe for workers . . . as set out in paragraphs 5, 11 and 13." Dkt. # 91, ¶¶ 21 & 22. "Paragraphs . . . 11 and 13" comprise Cain's First and Second Claims for Relief, both alleging violations of the OSEA. As discussed above, the court has found that the only portion of those claims that should survive summary judgment is Cain's First Claim for Relief against Willamette Valley, as owner of the premises. To the extent Cain attempts to bootstrap his OSEA allegations into his negligence cause of action, such an attempt should be denied. On the other hand, evidence that the defendants violated rules and regulations cited in paragraph 11 "may be evidence of the common law negligence." *Wickham,* 2005 WL 1705028 at *2

---

**6.** Moreover, the statute does not govern "work involving a risk of *substantial* danger," but rather "work involving a risk *or* danger to the employees or the public." O.R.S. § 654.305 (emphasis added). Clearly, the work involved "a risk" of some degree.

(citing *Shahtout,* 298 Or. at 600, 695 P.2d 897 (1985)). *Cf. Waldner v. Stephens,* 345 Or. 526, 540, 200 P.3d 556, 564 (2008) (implying, in *dicta,* that violation of a statutory duty may support a common-law negligence claim).

"Paragraph[ ] 5" comprises Cain's assertions of the ways in which the ladder was defective, as follows:

> The ladder neither had graspable handrails nor had graspable siderails. The siderails as extended above the top rung were not graspable. Moreover, there was not sufficient non–skid treatment of the rungs. Any non-skid treatment on the rungs was made ineffective or insufficiently effective by paint covering. The ladder had slippery rungs. Because of the ladder design and manufacture, climbing the ladder was dangerous and making the transition from the vertical part of the ladder to the roof was dangerous. The ladder as installed and improperly maintained was unsafe for workers.

*Id.,* ¶ 5.

■ To prove a negligence claim under Oregon law, Cain must show that (1) the defendants owed him a duty, (2) they breached that duty, and (3) the breach was the cause in fact of some legally-cognizable damage to Cain. *See Brennen v. City of Eugene,* 285 Or. 401, 405, 591 P.2d 719, 722 (1979) (citing *McEvoy v. Helikson,* 277 Or. 781, 562 P.2d 540 (1977); *Harding v. Bell,* 265 Or. 202, 508 P.2d 216 (1973)).

■ The highest hurdle for Cain to surmount with regard to his negligence claim is causation. In Oregon, "cause" means "cause in fact," which "generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed." *Joshi v. Providence Health Sys. of Oregon Corp.,* 198 Or.App. 535, 538–39, 108 P.3d 1195, 1197 (2005) (citations omitted). The "cause in fact" test is sometimes referred to as the "but for" test. *See id.* Under certain circumstances the Oregon courts have applied a "substantial factor" causation standard rather than a "but for" test. Significantly, for purposes of this case, the Oregon Supreme Court has applied the "substantial factor" standard in circumstances where " '[t]he respective liability of multiple defendants depends on whether the negligence of each was a *substantial factor* in producing the complained of harm.' " *Joshi v. Providence Health Sys. of Oregon Corp.,* 342 Or. 152, 160, 149 P.3d 1164, 1168 (2006) ("*Joshi II* ") (quoting *McEwen v. Ortho Pharmaceutical,* 270 Or. 375, 418, 528 P.2d 522, 543 (1974)) (emphasis by the *Joshi II* court).

■ The *Joshi II* court discussed in some detail the historical meaning and application the Oregon Supreme Court has given to the word "cause," *see id.,* 342 Or. at 158–62, 149 P.3d at 1167–69, noting that although the "but for" test "applies to the majority of cases," in most cases the "but for" and "substantial factor" standards will produce the same result. *Id.,* 342 Or. at 162, 149 P.3d at 1169. However, the "but for" test fails in a situation where there are two concurring causes for an event, either of which, operating alone, would have been enough to cause the identical result. *Id.,* 342 Or. at 161, 149 P.3d at 1169 (citing with approval W. Page Keeton, *Prosser and Keeton on The Law of Torts* 266, § 41 (5th ed. 1984)). In a case involving multiple tortfeasors, "the plaintiff need not show that each defendant's negligence was 'sufficient to bring about plaintiff's harm by itself; it is enough that [each

defendant] substantially contributed to the injuries eventually suffered by [the plaintiff].'" *Id.*, 342 Or. at 160, 149 P.3d at 1168 (quoting *McEwen*, 270 Or. at 418, 528 P.2d at 543). Ultimately, "the standard to be applied in a given case depends on the circumstances of that case." *Id.*, 342 Or. at 164, 149 P.3d at 1170. In any event, the mere fact that an accident happened does not create a presumption of negligence.

> Indeed, the law presumes the exercise of due care and it is incumbent upon the party charging negligence to establish it by the greater weight of the evidence. It is also fundamental that negligence can not be predicated upon mere conjecture, guesswork, or speculation. It is not necessary to establish negligence by direct and positive evidence, but there must be facts from which a reasonable inference of negligence may be drawn.

*Simpson v. Hillman*, 163 Or. 357, 363, 97 P.2d 527, 529 (1940). *Accord Bethel Sch. Dist. No. 2 v. Simplex Time Recorder Co.*, 185 F.3d 865 (Table), 1999 WL 397481 (9th Cir. May 26, 1999) (affirming dismissal of action because plaintiff's "theory of causation simply require[d] too much speculation") (citing *Simpson*, supra). Thus, as noted above, Cain faces a difficult challenge in proving the defendants' actions were a "substantial factor" in causing his accident.

The defendants argue Cain cannot show his accident was the result of any negligence on their part. They note that no one witnessed the accident, and Cain testified that he has no memory of how the accident actually occurred. The defendants urge the court not to consider changes Cain made to his deposition testimony when he reviewed the transcript, asserting that Cain gave clear, unambiguous responses to the questions, and then tried to back pedal and materially change his answers after the fact. The defendants argue that because there is no evidence of how or why the accident occurred, the jury could return a verdict for Cain only by speculating or guessing as to how and why Cain fell, something the law does not allow. *See Simpson, supra.* They further argue that even if Cain's changed testimony is allowed, the evidence still is based on speculation and is inadmissible evidence that cannot sustain Cain's burden of proof on his negligence claim. *See* Dkt. # 133, Bovis's brief, pp. 6–12; Dkt. # 150, Bovis's reply brief, pp. 3–12; Dkt. # 121, Willamette Valley's brief, pp. 13–17; Dkt. # 154, Willamette Valley's reply brief, pp. 10–18; Dkt. # 128, Wylie Steel's brief, pp. 5–7, 14–17; Dkt. # 152, Wylie Steel's reply brief, pp. 7–12.

Cain testified repeatedly in his deposition that he had no memory of how the accident occurred. He did not recall his foot slipping or his feet giving way, and he had no idea what had happened that caused him to fall. *See* Dkt. # 122, Ex. 9, Cain Depo., pp. 200, 207, 260–61; Dkt. # 134, Ex. A, Cain Depo., pp. 257–58. When Cain reviewed his deposition transcript, he made a material change to this testimony, noting, "My feet slipped off the ladder rung." Dkt. # 144, Ex. 1, Change Sheet. As the reason for the correction, Cain stated:

> I have reviewed the transcript from when John Murphy, the Oregon OSHA investigator, interviewed me using a tape recorder. That interview was done less than 2 months after the accident. After reading the interview transcript, I remember that my feet slipped off the ladder rung.

*Id.*

Cain notes other witnesses also reported that he told them his foot slipped. In Del

Allen's report to Bovis, he wrote, "Mike Cain said his foot slipped at the top of the ladder." Dkt. # 144, Ex. 3, Allen Depo., p. 51 (reading from accident report prepared by Allen). Cain points out that some courts have held circumstantial evidence can be used to prove causation. Dkt. # 142, p. 7 (citing *Holland v. United States*, 348 U.S. 121, 137, 75 S.Ct. 127, 99 L.Ed. 150 (1954)) ("Circumstantial evidence . . . is intrinsically no different from testimonial evidence."). He argues that in this case, the circumstantial evidence would allow the jury to conclude that his "foot slipped on a high rung of the ladder . . . because the rungs on the ladder were deficient and failed to meet proper code standards," and he tried to grasp the side rail but was unable to do so "because the side rails were deficient and failed to meet proper code standards." Dkt. # 142, p. 8; *see id.*, pp. 5–9 (citing *Hurley v. Marriott Corp.*, Nos. 93–CV–1544, 94–CV–117, 1995 WL 694614 (N.D.N.Y. Nov. 21, 1995); *Sketo v. Olympic Ferries, Inc.*, 436 F.2d 1107 (9th Cir.1970)).

The defendants argue that Cain cannot create a question of fact simply by contradicting his prior deposition testimony. Willamette Valley cites *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262 (9th Cir.1991), in support of this proposition. In *Kennedy*, the court discussed the issue, holding as follows:

> The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony. *See Foster v. Arcata Associates*, 772 F.2d 1453, 1462 (9th Cir.1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 543–44 (9th Cir.1975). "[I]f a party who has been

examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Foster*, 772 F.2d at 1462; *Radobenko*, 520 F.2d at 544 (quoting *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969)).

*Kennedy*, 952 F.2d at 266. The court noted, however, that other circuits "have urged caution in applying this rule," *id.* (citing cases), and concluded:

> [T]he *Foster–Radobenko* rule does not automatically dispose of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a "sham."

*Kennedy*, 952 F.2d at 266–67.

First, this case is not one involving an affidavit contradicting a prior deposition; rather, it involves corrections made when a deponent read his deposition. The court cannot say that Cain's deposition corrections rise to the level of "sham" testimony, particularly in light of the other corroborating evidence cited by Cain. The credibility of Cain's testimony is for the jury to determine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Willamette Valley offers an additional argument in favor of its motion for summary judgment on Cain's negligence claim. The hospital argues that "[w]hen a negligence claim involves a[n] obligation arising out of a special relationship or rule that creates, defines or limits that obligation, then 'duty' remains a formal element of the action." Dkt. # 121, p. 29 (citing *Fazzolari*). The hospital argues the present case involves "a defined relationship between an owner/occupier of land and a visitor," and therefore, Cain "must plead and prove a duty owed in negligence against an owner or occupier of land"—in other words, a claim identical to Cain's premises liability claim. *Id.* (citing *Thompson v. Klimp*, 101 Or.App. 127, 130, 789 P.2d 696, 698 (1990); *Rex v. Albertson's, Inc.*, 102 Or.App. 178, 180–81, 792 P.2d 1248 (1990)). Wylie Steel similarly argues that Cain's negligence claim is redundant of his premises liability claim, which "cannot apply to Wylie Steel because Wylie Steel was not an owner or possessor of the premises." Dkt. # 128, p. 15.

 I agree that as to Willamette Valley and Bovis, the premises liability claim and the negligence claim are one and the same. *See Thompson v. Klimp*, 101 Or. App. 127, 789 P.2d 696 (1990) ("[A] claim which invokes the obligations of a possessor of land to an invitee or licensee has invoked a 'special relationship' that takes the claim out of the generalized standards of common law negligence.") Cain's counsel conceded this point during oral argument. Therefore, Cain's ordinary negligence claim as to Willamette Valley and Bovis should be dismissed as redundant of his premises liability claim.

 As to Wylie Steel, however, Cain has not asserted a premises liability claim. The fact that Wylie Steel "was not an owner or possessor of the premises" does not preclude an ordinary negligence claim against Wylie Steel based on its allegedly defective manufacture of the ladder. Summary judgment generally is disfavored in negligence actions, and is proper only " 'where the facts are essentially undisputed and only issues of law remain.' " *Commonwealth Utilities Corp. v. Goltens Trad. & Eng. PTE Ltd.*, 313 F.3d 541, 546 (9th Cir.2002) (quoting *Camacho v. Du Sung Corp.*, 121 F.3d 1315, 1317 (9th Cir.1997), in turn citing *Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir.1978)). In the present case, although most of the facts in the case are undisputed, the facts regarding how and why the accident occurred are in dispute. Viewing those facts in the light most favorable to Cain, as the non-moving party, I find sufficient issues of material fact exist to preclude summary judgment for Wylie Steel and ESA on this claim. I write separately with regard to Wylie Steel's additional arguments, below.

### SIXTH CLAIM FOR RELIEF: LOSS OF CONSORTIUM

 The Cains assert a claim for Jennifer Cain against all of the defendants for "emotional distress and loss of consortium and other general damages." Dkt. # 91, ¶ 24. "[A] claim for loss of consortium is based on injuries peculiar to a plaintiff that were the consequence of tortious injury suffered by the plaintiff's spouse." *Shoemaker v. Management Recruiters Inter'l, Inc.*, 125 Or.App. 568, 865 P.2d 1331 (1993) (citations omitted).

■ Mrs. Cain's claim for loss of consortium does not present separate issues from Cain's claims, discussed above. *See Ross v. Cuthbert*, 239 Or. 429, 432, 397 P.2d 529, 530 (1964) (wife's action for loss of consortium "is measured by and subject to any defenses available in a husband's action for redress of the same harm"). Because I recommend that some of Cain's claims survive summary judgment, Mrs. Cain's loss of consortium claim also should survive with respect to those same claims.

### *WYLIE STEEL'S MOTION*

I write separately as to three issues raised by Wylie Steel in its motion for summary judgment. First, Wylie Steel claims all of Cain's claims against it are barred by the applicable statute of limitations. Second, it claims Cain is attempting to assert an entirely new claim against Wylie Steel in Cain's summary judgment briefing. And third, it seeks summary judgment on the indemnity claims brought by Bovis and Willamette Valley.

### *Wylie Steel's Statute of Limitations Defense*

Wylie Steel asserts that all of Cain's claims against it are barred by the applicable statute of limitations.[7] Dkt. # 128, pp. 17–19; Dkt. # 152, pp. 3–7. Wylie Steel points to the following chronology of events, confirmed by the docket entries in the case:

01/01/08 Cain's accident occurred

06/23/09 Cain filed suit against Bovis and Willamette Valley (Dkt. # 1)

11/17/09 Bovis filed a third-party claim against Wylie Steel (Dkt. # 25)

11/18/09 Willamette Valley filed a third-party claim against Wylie Steel (Dkt. # 26)

07/19/10 Cains filed claims against Wylie Steel (Dkt. # 61)

Dkt. # 128, p. 18.

■ Wylie Steel asserts, and Cain concurs, that personal injury claims must be filed within two years of the date of the injury. *See* Dkt. # 128, Wylie Steel's brief, p. 18; Dkt. # 143, Cain's brief, p. 18 (both citing O.R.S. § 12.110(1)). Cain, however, argues the "discovery rule" applies to personal injury actions, and he filed his direct claims against Wylie Steel within two years after he discovered that Wylie Steel fabricated the ladder, which he learned in September 2009, when the Cains' attorney received documents in response to discovery requests. *See* Dkt. # 143, Cain's brief, pp. 18–20; Dkt. # 144, Declr. of E.J. Simmons, ¶ 17.[8]

In Oregon, the parameters of the "discovery rule" are well settled. "At least in

---

7. At the time the Cains sought leave to amend their complaint to assert direct claims against Wylie Steel, Wylie Steel did not object to the amendment, but reserved the right to assert and pursue affirmative defenses against those claims. *See* Dkt. # 129, Wylie Steel's statement of material facts, ¶ 28; admitted by Cain, Dkt. # 145, ¶ 28.

8. I did not know who made or designed the ladder until well into the discovery process. That is, the initial documents received from Oregon OSHA did not identify the designer or supplier of the ladder. I received documents from counsel in September 2009 that contained information about the architect on the project, and around that time I learned of Wylie Steel's involvement. Defendant Wylie Steel was a third party defendant on November 17 and 18, 2009 when the original defendants filed amended complaints against the third party defendants. Plaintiff's motion to make direct claims against Wylie Steel was filed July 12, 2010. The amended complaint asserting direct claims against Wylie Steel was filed July 19, 2010.

Dkt. # 144, Declr. of E.J. Simmons, ¶ 17.

theory, ... the discovery rule does not require *actual* discovery or knowledge of the claim but, instead, imputes to the plaintiff the level of knowledge that an exercise of reasonable care would have disclosed." *Johnson v. Multnomah County Dept. of Comm. Justice,* 344 Or. 111, 118, 178 P.3d 210, 213–14 (2008) (emphasis in original). The *Johnson* court described what "discovery" entails in this context:

> "[D]iscovery of an injury involves actual or imputed knowledge of three separate elements: harm, tortious conduct, *FN2* / and causation. *Gaston v. Parsons,* 318 Or. 247, 255, 864 P.2d 1319 (1994). In other words, the ... claim period does not commence to run, under the discovery rule, until a plaintiff knows or, in the exercise of reasonable care should know, that he or she has been injured and that there is a substantial possibility that the injury was caused by an identified person's tortious conduct. *Adams* [*v. Oregon State Police,* 289 Or. 233,] 239[, 611 P.2d 1153 (1980)] (so stating).
>
> FN2/ It may be argued that there is a fourth element, *viz.,* the probable identity of the tortfeasor. We think that that element inheres in the concept of "tortious conduct"—someone, after all, must have carried out the "conduct."

*Johnson,* 344 Or. at 118, 178 P.3d at 214.[9]

■■■ Similar to the issue in *Johnson,* the issue here is whether and when Cain "knew or should have known that his ... injury was caused by a particular defendant's tortious conduct[.]" *Id.* The *Johnson* court held that the issue "ordinarily is a question of fact for the jury; it may be decided on summary judgment as a matter of law only if the record on summary judgment presents no triable issue of fact." *Id.* (citation omitted).

Wylie Steel argues this case does not present a "discovery rule" situation, but instead "is the type of personal injury case where all operative facts are deemed 'inherently discoverable' on the date of the occurrence." Dkt. # 152, p. 4; *see id.,* pp. 4–7. Wylie Steel cites *Workman v. Rajneesh Foundation International,* 84 Or.App. 226, 733 P.2d 908 (1987), in support of its argument. *Workman* involved actions for defamation based on statements made at a public school board meeting that the plaintiffs did not attend. Both of the plaintiffs became aware of the statements "before the end of the month in which they were made. They brought their actions one year and one day after the making of the statements." *Id.,* 84 Or.App. at 228 n. 1, 733 P.2d at 909 n. 1. The court considered whether the statute of limitations was tolled until the plaintiffs discovered the statements had been made, observing as follows:

> Unless the language or history of the statute [in question] dictates otherwise, the threshold question should be whether the wrong and its probable consequences, by their nature, are *inherently discoverable* upon the occurrence. If the answers is yes, the policy underlying limitations on actions should prevail over the countervailing policy promoted by the discovery rule, even if the plaintiff in a particular case happened not to have discovered the wrong at the time when it occurred.

*Id.,* 84 Or.App. at 230, 733 P.2d at 911 (emphasis in original). The court an-

---

**9.** In *Johnson,* the court considered when the 180–day notice requirement began to run for purposes of notice under the Oregon Tort Claims Act. The same analysis applies in the statute of limitations context.

swered the question "yes" with regard to statements made at a public meeting. The plaintiffs had learned of the statements and knew they had a right of action within a few days of the date the statements were made, and therefore the statute of limitations was not tolled. *Id.*, 84 Or.App. at 230–31, 733 P.2d at 911. *See Goodman–Herron v. Advanced Navigation & Positioning Corp.*, 940 F.Supp. 281 (D.Or.1996) ("The discovery rule applies to defamation actions when the initial publication is confidential in nature and not something that a plaintiff would be presumed to have known about, even if he had exercised reasonable diligence.") (distinguishing *Workman* on its facts).

Wylie Steel also relies on *Gehrke v. CrafCo, Inc.*, 143 Or.App. 517, 923 P.2d 1333 (1996), where the plaintiff sued for injuries sustained in a slip-and-fall accident at a store. The plaintiff's attorney researched ownership of the store where the accident occurred, a "Ben Franklin" craft store, and determined from the Secretary of State that the store was owned by CrafCo doing business as Ben Franklin Crafts. Suit was filed "just before the statute of limitations was to expire," naming CrafCo as the defendant. *Id.*, 143 Or.App. at 519, 923 P.2d at 1334. CrafCo filed a prompt motion for summary judgment, supported by an affidavit from CrafCo's president and registered agent, asserting that "Craf-Co, Inc." had never owned, operated, or managed the store where the plaintiff's accident occurred. The plaintiff deposed the president and learned that another entity, PJDJS, actually owned and operated the store in question, while CrafCo operated a store under the same name in a different location.

Based on the information obtained during the deposition, the plaintiff filed an amended complaint that reasserted her claim against CrafCo, and added a similar claim against PJDJS. The amended complaint was filed more than two years after the plaintiff's injury occurred. The defendants filed motions for summary judgment, CrafCo renewing its previous argument regarding ownership of the store, and PJDJS asserting a statute of limitations defense. The motions were granted, and the plaintiff appealed, arguing issues of fact existed as to whether the plaintiff reasonably should have discovered the identity of PJDJS.

The parties agreed that for purposes of a negligence action, the statute of limitations begins to run when the plaintiff "discovers, or in the exercise of reasonable diligence should have discovered, the identity of the tortfeasor." *Gehrke*, 143 Or. App. at 522, 923 P.2d at 1336 (citing *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or. 151, 742 P.2d 1176 (1987)). The defendant, however, argued Gehrke should have discovered the tortfeasor's correct identity within the limitations period. The defendant noted Gehrke knew where she had fallen, and knew the store's owner/operator was causally responsible for her fall. The court agreed, holding the discovery rule did not apply under the facts of the case. *Id.*, 143 Or.App. at 522–23, 923 P.2d 1333, 1336–37 ("In this case, plaintiff knew or should have known that she had been wronged by the possessor of the store at the time of the fall, even though she did not know whom the possessor was.").

The Oregon Court of Appeals distinguished *Gehrke* in two 2007 decisions. In the first, *Cole v. Sunnyside Marketplace, LLC*, 212 Or.App. 509, 160 P.3d 1 (2007), the plaintiff was abducted from her workplace and raped. She sued the owner of the shopping center and its property man-

ager, alleging, *inter alia,* that they were negligent in failing to provide adequate security at the mall. The plaintiff's timely discovery requests were not answered for six months. When she finally received the responses, she learned that the mall had contracted for security services with Harbor Security. Two years and 98 days after the incident in question, the plaintiff amended her complaint to add a negligence claim against Harbor.

Harbor moved for summary judgment, claiming the plaintiff had failed to sue it within the applicable two-year statute of limitations. The plaintiff argued that under the "discovery rule," the two-year statute of limitations did not begin to run until she learned that Harbor might be liable for her injuries. The trial court granted Harbor's motion for summary judgment, finding that "Harbor's existence and identity were readily discoverable at the time of plaintiff's injury. In the absence of specific reasons why plaintiff was prevented from discovering Harbor's existence, ... there was no basis for tolling the statute of limitations." *Cole,* 212 Or.App. at 512, 160 P.3d at 3.

The plaintiff appealed. She argued that at the time of the incident, she had no knowledge that *any* company provided security for the mall, and at the least, the question of whether she reasonably should have acquired that knowledge within two years from the date of the incident was a question for the jury. Harbor asserted two arguments in response. First, Harbor argued cases holding that personal injury actions are subject to the discovery rule were wrong and, therefore, not controlling. Second, Harbor argued that even if the discovery rule generally applied to the statute of limitations for personal injury actions, it was not applicable in this case

pursuant to *Gehrke,* because "the existence and identity of the alleged tortfeasor [was] 'inherently discoverable' from the moment of injury." *Id.,* 212 Or.App. at 513, 160 P.3d at 3.

The appellate court engaged in a thorough review of the history of the "discovery rule," and cases construing the rule, and rejected Harbor's argument that O.R.S. § 12.110(1) "should not be construed to include a discovery provision." *Id.,* 212 Or.App. at 518, 160 P.3d at 6; *see id.,* 212 Or.App. at 514–18, 160 P.3d at 3–6 (examining the history of the "discovery rule"). The court then addressed Harbor's argument that, under the facts of the case, the "discovery rule" should not apply.

The court first noted that the issue was before it in the context of an appeal from the trial court's grant of summary judgment. The applicable standard of review, therefore, required the court "to examine the evidence in the light most favorable to plaintiff, giving to plaintiff the benefit of all reasonable inferences, to determine whether there [was] a genuine issue of material fact and whether defendant [was] entitled to judgment as a matter of law." *Id.,* 212 Or.App. at 519, 160 P.3d at 6.

Turning to the issue of whether Harbor's possible liability to the plaintiff was "inherently discoverable," the court observed:

> When a plaintiff in the reasonable exercise of care should have become aware of a substantial possibility that another is responsible for her injury is a question of fact that can be resolved against the plaintiff on summary judgment only if the plaintiff should have achieved that awareness as a matter of law. *Johnson,* 210 Or.App. at 597–98, 152 P.3d 927.

> In some cases, the relevant facts are so obvious to a reasonable person that

they are said to be "inherently discoverable." In such cases, we have said that the discovery rule does not "apply." *E.g., Workman v. Rajneesh Foundation International,* 84 Or.App. 226, 230, 733 P.2d 908, *rev. den.,* 303 Or. 700, 740 P.2d 1213 (1987). The phrasing is perhaps imprecise; in such cases, the discovery rule "applies," but its application does not toll the statute of limitations because the information should reasonably have been discovered earlier. Our opinion in *Gehrke* illustrates the proper application of the principle.

*Id.* The court reviewed its decision in *Gehrke,* and then held as follows:

> We conclude that this is not a case in which the relevant facts as to Harbor's identity and possible responsibility for plaintiff's assault were so obvious at the time of plaintiff's injury that the information may fairly be said to be "inherently discoverable." This case is not controlled by *Gehrke,* where the plaintiff, at the time of her injury, knew the identity of the tortfeasor—the store—and simply did not exercise reasonable diligence in nailing down accurately the identity of the store's owner. In this case, at the time of her injury, plaintiff did not know the identity of the tortfeasor—Harbor—at all. In fact, it is undisputed that she did not know that Sunnyside mall had contracted with *anyone* to provide security.

*Id.,* 212 Or.App. at 520, 160 P.3d at 7 (emphasis in original).

The *Cole* court next addressed the question of "whether, as a matter of law, plaintiff in [the] case knew or should have known of the relevant facts some time after the injury but more than two years before the date that she filed the second amended complaint against Harbor." *Id.*

The court found the issue could not be resolved as matter of law, but rather remained a question of fact that precluded summary judgment. *Id.,* 212 Or.App. at 520–21, 160 P.3d at 7.

Harbor contended that if the plaintiff had inquired properly during the three months following the incident, she could have discovered Harbor's involvement. "In other words, Harbor argue[d] that plaintiff had a duty to inquire and to inquire promptly." *Id.,* 212 Or.App. at 521, 160 P.3d at 7. The court's holding is directly on point in the present case:

> Whether a plaintiff is subject to a duty to inquire about facts that might trigger a statute of limitations, however, is itself a question of fact. *Johnson,* 210 Or.App. at 599–600, 152 P.3d 927. The duty arises only when there are facts that would prompt a reasonable person to make the inquiry. *Id.* ...
>
> Moreover, and in any event, *a statute of limitations to which the discovery rule applies is not triggered by a duty to inquire.* As the Supreme Court made clear in *Greene v. Legacy Emanuel Hospital,* 335 Or. 115, 123, 60 P.3d 535 (2002), ... [w]hen there is a duty to inquire, ... "the period of limitations would commence at some later point when, after inquiry, the facts reasonably should disclose the existence of an actionable injury." *Id.*
>
> ...
>
> In the end, Harbor's argument reduces to the assertion that plaintiff could have asked for the information earlier than she did. That, however, is not sufficient to trigger the statute of limitations.

*Cole,* 212 Or.App. at 521–22, 160 P.3d at 7–8 (emphasis added).

The second 2007 case in which the Oregon Court of Appeals distinguished *Gehrke* was *Bodunov v. Kutsev,* 214 Or.App. 356, 164 P.3d 1212 (2007). The plaintiffs there brought a fraud claim against the sellers of a farm, mobile homes, and a migrant camp. The court reached a similar conclusion to that in *Cole.*

In the present case, Wylie Steel's argument mirrors that of Harbor Security in the *Cole* case. Wylie Steel claims Cain should have discovered its identity and possible liability because Cain was aware, at the time of the accident, that his fall occurred on the site of a construction project; he worked for a subcontractor on the project; and "it was 'inherently discoverable' that the owner, the primary contractor, or some other party who was part of the construction of the area of the fall, would be potential defendants." Dkt. # 152, pp. 6–7 (footnote omitted). Wylie Steel's "argument reduces to the assertion that [Cain] could have asked for the information earlier than [he] did. That, however, is not sufficient to trigger the statute of limitations." *Cole,* 212 Or.App. at 522, 160 P.3d at 8. The court rejects Wylie Steel's contention that its possible liability to Cain was 'inherently discoverable' at the time of the accident. Wylie Steel's motion for summary judgment on the statute of limitations issue should, therefore, be denied.

### Assertion of a New Claim

Wylie Steel argues that in responding to its motion for summary judgment, Cain has completely ignored the negligence claim asserted in his complaint, and instead attempts to put forth a new, alternative theory, to-wit: " 'Plaintiffs' claims against Wylie are simple: the fixed ladder it manufactured did not comply with Oregon OSHA, was not manufactured according to specifications, and was dangerous.' "

Dkt. # 152, Wylie's reply brief, p. 15 (quoting Dkt. # 143, Cain's response brief, p. 4). Wylie Steel argues "[t]his 'summary' of plaintiffs' claims does not accurately reflect what they put at issue in their own pleadings, is not supported by Oregon law, and is not supported by the undisputed facts." *Id.*

According to Wylie Steel, Cain is attempting to assert a claim for breach of a "design duty." It claims it is not a design professional, and not a proper defendant for a "negligent design" claim. Dkt. # 12, p. 16 (noting that under Oregon law, " 'design' issues are non-delegable"; citing *Johnson v. Salem Title Co.,* 246 Or. 409, 414–15, 425 P.2d 519, 522 (1967)).

Cain's negligence claim as to Wylie Steel is based on his factual allegation that the ladder's "manufacture" rendered it dangerous to climb. *See* Dkt. # 91, ¶ 5. In addition, although Wylie Steel is not subject to the OSEA in this case, as discussed above, evidence that Wylie Steel failed to manufacture a safe ladder, as alleged in paragraph 11(n), could support Cain's claim that Wylie Steel's negligence contributed to his injury. While Cain may be skating on thin ice with this claim, nevertheless, the issue of whether Wylie Steel's actions contributed to Cain's injury is one of fact for the jury.

While the court does not read Cain's allegation as asserting a new "design defect" claim against Wylie Steel, to the extent that is the case, the claim should not be allowed. Thus, Wylie Steel's motion for summary judgment should be denied with regard to Cain's general negligence claim, but granted insofar as Cain attempts to assert an unpled "design defect" claim against Wylie Steel.

### Indemnity Claims

Wylie Steel argues that to the extent summary judgment is granted to Bovis

and/or Willamette Valley, any corresponding indemnity and contribution claims of those defendants against Wylie Steel also should be dismissed. Dkt. # 128, pp. 19–20. Such a result would seem to be obvious. If Cain cannot maintain a particular claim against Bovis and/or Willamette Valley, then no damages would be assessed against those defendants on those claims, and thus no claims for indemnity or contribution by those defendants would be possible.

■ Willamette Valley, however, argues that even if it were granted summary judgment on any of Cain's claims, it still could pursue "its defense costs under an indemnity theory of recovery against any party against whom it has made such claim." Dkt. # 140, pp. 2–3. Ordinarily, to sustain an indemnity claim, the indemnitee first must be found liable to the injured third party. If the indemnitee is not found to be negligent or to have caused the third party's injuries, an indemnity claim cannot be sustained. *See Arch Chemicals, Inc. v. Radiator Specialty Co.*, 727 F.Supp.2d 997, 999 (D.Or.2010) (citing *Mayorga v. Costco Wholesale Corp.*, No. CV–06–882, 2007 WL 204017, at *9 (D.Or. Jan. 24, 2007); *Irwin Yacht Sales, Inc. v. Carver Boat Corp.*, 98 Or.App. 195, 198, 778 P.2d 982, 984 (1989); *Smith v. Urich*, 151 Or.App. 40, 947 P.2d 1125 (1997)).

■ However, when the indemnity claim is for defense costs only, "a plaintiff who has denied liability, but still incurred defense costs is not required to prove that it was actually liable to the third party." *Arch Chemicals, Inc.*, 727 F.Supp.2d at 1001 (citing *Moore Excavating, Inc. v. Consolidated Supply Co.*, 186 Or.App. 324, 331, 63 P.3d 592 (2003)) (reasoning that in such a case, as between the indemnitee

"and the putative indemnitor, the indemnitor should bear the burden of the defense"). Thus, Willamette Valley may be able to pursue its defense costs. The issue, however, is premature for consideration at this stage of the proceedings.

Wylie Steel further argues that if Cain's claims against it are dismissed, but claims against Bovis and/or Willamette Valley remain in the case, then "it would necessarily mean that the Court has determined that such other party owed [the plaintiff] its own separate and distinct duties—which cannot give rise to the pass-through liability." *Id.*, p. 20 (citing, *inter alia*, O.R.S. § 30.140 for the proposition that "contractual indemnity is not available in the context of construction contracts where one party seeks to have another party indemnify it for that party's own negligence"). *Id.*, pp. 19–20. Simply because material issues of fact preclude summary judgment on a claim does not "necessarily mean that the court has determined" the defendants who remain in the case "owed [their] own separate and distinct duties," preventing them from pursuing a claim for defense costs. Again, the issue is premature at this stage of the proceedings.

### CONCLUSION

In summary, I recommend that:

1. ESA's motion for summary judgment be granted as to Cain's First Claim for Relief, alleging violations of the OSEA.

2. Bovis's motion for summary judgment be granted as to Cain's First and Second Claims for Relief, alleging violations of the OSEA.

3. Willamette Valley's motion for summary judgment be denied as to Cain's First Claim for Relief, on the basis that

the hospital is an "owner" for purposes of OSEA § 654.015, and material questions of fact exist regarding whether the hospital violated the statute.

4. Wylie Steel's motion for summary judgment be granted as to Cain's First Claim for Relief, alleging violations of the OSEA.

5. Willamette Valley's and Bovis's motions for summary judgment be denied as to Cain's Third Claim for Relief, alleging premises liability.

6. Bovis's motion for summary judgment be denied as to Cain's Fourth Claim for Relief, for violation of the ELA.

7. Willamette Valley's and Bovis's motions for summary judgment be granted, and Wylie Steel's and ESA's motions for summary judgment be denied, as to Cain's Fifth Claim for Relief, for negligence.

8. All of the defendants' motions for summary judgment be denied as to the Cains' Sixth Claim for Relief, for loss of consortium.

9. Wylie Steel's motion for summary judgment based on the statute of limitations be denied.

10. Wylie Steel's motion for summary judgment be denied with regard to Cain's general negligence claim, but granted insofar as Cain attempts to assert an unpled "design defect" claim against Wylie Steel.

11. Wylie Steel's MSJ as to indemnity and contribution claims of Bovis and Willamette Valley be denied.

### SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **August 2, 2011.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then any response is due by **August 19, 2011.** By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.